CITY OF LINCOLN, NEBRASKA, A MUNICIPAL CORPORATION, APPELLEE, V. BILLY BRUCE AND BETTY BRUCE, APPELLANTS.
375 N.W.2d 118

Filed October 25, 1985.　No. 84-503.

Dana M. London, for appellants.

John C. McQuinn, Assistant Lincoln City Attorney, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

Defendants, Billy and Betty Bruce, husband and · wife, appeal from a mandatory injunction requiring that they remove a mobile home from their property. The Bruces assert two assignments of error. Firstly, the district court erred in ruling that the subject section of the Lincoln Municipal Code does not deprive them of equal protection of the law under the federal and state Constitutions. The argument they actually make with respect to the claimed unconstitutionality of the municipal code, as contrasted to an enabling statute, however, is that the relevant code provision is vague and therefore deprives them of due process. Secondly, the district court erred in ruling that the use made of the mobile home is not an accessory one customarily incident to the permitted uses of the subject property. We find both assignments to be without merit and, accordingly, affirm the decree of the district court.

In the interest of completeness we note that this is the second time that the propriety of maintaining a mobile home on the Bruces' property is before this court. The first appearance, *State v. Bruce*, 213 Neb. 661, 330 N.W.2d 752 (1983), presented a related, but different, legal issue.

The City of Lincoln instituted this action to obtain a mandatory injunction commanding the Bruces to remove a mobile home from their property. The city alleges a violation, among others, of Lincoln Mun. Code § 27.07.050 (1979). That section of the code states: "Accessory uses permitted in the AG agriculture district are accessory buildings and uses customarily incident to any of the permitted uses in the district." Lincoln Mun. Code § 27.07.020 (1979) permits buildings for certain specified agricultural uses and further provides that a "building or premises" within the AG agriculture district "shall be permitted to be used for . . . [s]ingle-family dwellings."

The Bruces own the subject property which is zoned AG agriculture and is located in Lancaster County. Although this parcel of land, consisting of approximately 5 acres, is not located within the Lincoln city limits, it is within the city's 3-mile zoning jurisdiction granted by Neb. Rev. Stat. § 15-902 (Reissue 1983).

The Bruces bought their property in 1955, at which time a mobile home was situated on the premises. That or another mobile home was kept on the property periodically from the time of purchase through May of 1969. No mobile home was on the property thereafter until January of 1973, when a mobile home was again placed thereon. This mobile home has been occupied since 1979 by various parties other than the Bruces themselves. At the time of trial the Bruces' 26- or 27-year-old daughter resided in the mobile home, which is attached to utilities. The Bruces themselves live in a single-family home also located on the property.

After January 1, 1978, and prior to May 8, 1979, the property was located in an A-1 single-family zoning district, which permitted single-family dwellings and accessory uses incidental thereto. After May 8, 1979, and prior to March 29, 1982, the area within which the property is located was zoned as R-3 residential. That zoning permitted single- and two-family

dwellings.

Several witnesses testified that the Bruces' mobile home constituted a nonconforming use of the property and that it constituted a nuisance and presented a danger to the surrounding structures and inhabitants. Mrs. Bruce testified that she and her husband lease some land adjoining their property, and it, together with their own land, is used to pasture up to five calves and three horses. She also testified that some of the land is planted in corn and alfalfa. Other witnesses testified they saw neither animals nor fences on the property.

In connection with the first issue presented by their assignments of error, the Bruces appear to contend that § 15-902 unconstitutionally deprives them of equal protection of the laws under the fourteenth amendment to the U.S. Constitution and art. I, §§ 1 and 3, of the Nebraska Constitution. Their claim is based on the fact that as nonresidents of the city of Lincoln they do not have the right to vote for the officials making land use decisions on their property.

The short answer to that contention is that the Bruces have failed to comply with Neb. Ct. R. 16A (rev. 1983) requiring that a copy of the brief assigning the unconstitutionality of a statute is to be served upon the Attorney General in those cases in which he is not already a party. That failure is fatal to a consideration of the foregoing argument by this court. *Vanarsdale v. Lincoln County*, 212 Neb. 790, 326 N.W.2d 47 (1982).

We therefore move on to a consideration of the Bruces' attack on § 27.07.050 of the Lincoln Municipal Code. As noted earlier, although the assignment of error attacks the section on the basis it deprives them of "equal protection," the argument actually presented is that the section is vague and, thus, deprives the Bruces of due process. Specifically, the Bruces contend that the term "accessory use" is not defined so as to give them notice that their conduct is impermissible.

We begin with the concept that an ordinance is presumed to be constitutional and that its unconstitutionality must be clearly established. *State v. Davison*, 213 Neb. 173, 328 N.W.2d 206 (1982). More specifically, in the absence of clear and

satisfactory evidence to the contrary, a zoning ordinance is presumed to be valid. *Sasich v. City of Omaha*, 216 Neb. 864, 347 N.W.2d 93 (1984).

To expect the City of Lincoln to list in detail each use which might be incidental to a primary use is unreasonable and absurd. *City of Beatrice v. Goodenkauf*, 219 Neb. 756, 366 N.W.2d 411 (1985), establishes that zoning laws should be given a fair and reasonable construction in light of the manifest intention of the legislative body, the objects sought to be attained, the natural import of the words used in common and accepted usage, the setting in which they are employed, and the general structure of the law as a whole. Where the provisions of a zoning ordinance are expressed in common words of everyday use, without enlargement, restriction, or definition, they are to be interpreted and enforced according to their generally accepted meaning. In that case we held that caring for a large number of dogs did not constitute "animal husbandry" and, thus, was not an accessory use which was defined in the pertinent ordinance as something " 'normally appurtenant to the permitted uses and structures.' " *Id.* at 759, 366 N.W.2d at 413.

We conclude that § 27.07.050 is sufficiently clear and certain as to inform the Bruces what types of uses are permitted and not permitted as accessory uses. Therefore, the Bruces' contention in connection with their first assignment of error, that the relevant code section is unconstitutionally vague, is meritless.

The Bruces further contend, in connection with their second assignment of error, that in any event they did not violate § 27.07.050 by permitting the mobile home to remain on their property. Their argument in this regard is twofold.

First, they argue that when they bought the property, they acquired the right to maintain a mobile home on the land. This is presumably so because a mobile home was situated on the property at the time they bought it.

Present Lincoln Mun. Code § 27.38.010, adopted November 24, 1969, provides that an existing nonconforming use may be continued. The record is silent as to whether a similar provision existed when the Bruces purchased the property. Be that as it may, however, there was no mobile home on the Bruces'

property for a period of 3 years and 8 months, from May 1969 through January 1973. During that period of time, Lincoln Mun. Code § 27.38.030, adopted November 2, 1953, provided that the discontinuance of a nonconforming use for a period of 2 years forfeited the right to reestablish such a nonconforming use thereafter. (A similar provision is now found in Lincoln Mun. Code § 27.61.030 (1979).)

The Bruces, however, argue that a legislative act will not be permitted to operate retroactively where it invalidates or impairs contractual obligations or interferes with vested rights, citing *Dell v. City of Lincoln*, 170 Neb. 176, 102 N.W.2d 62 (1960). The thesis of the Bruces' position seems to be that since the mobile home was once permitted on the land, it must always be permitted on the land, with or without interruption. *Dell* is simply not apposite; it dealt with the reversionary interest in title to a vacated street, not whether one may forfeit the right to reestablish a discontinued nonconforming use.

Moreover, the Bruces confuse the operation of ordinances designed to eliminate nonconforming uses with the retroactive application of new restrictions on use.

Generally, a zoning ordinance will not be applied immediately to a use which the ordinance renders nonconforming. This is so because the landowner is thought to have a vested right in the continuation of the use of that land. See 1 R. Anderson, American Law of Zoning § 6.06 (2d ed. 1976). However, ordinances which limit and plan for the elimination of nonconforming uses are generally considered a proper exercise of a municipality's power. "While the mainstream of judicial decisions moves firmly toward the protection of vested rights in the use of land, neither the courts nor the legislators have lost sight of the policy considerations which prompt the limitation of nonconforming uses, and generate plans for their elimination." 1 R. Anderson, *supra* § 6.07 at 371.

Section 27.38.030 and its successor, § 27.61.030, provide for the gradual elimination of what have become nonconforming uses. They do not retroactively deprive the Bruces of a vested right. We are required to presume that a legislative body, in enacting ordinances, acted within its authority, and the burden

rests on those who challenge their validity to show that, in the matter called in question, the action of the municipal authorities was arbitrary, unreasonable, and without substantial relation to public safety, health, morals, or general welfare. *Copple v. City of Lincoln*, 202 Neb. 152, 274 N.W.2d 520 (1979). There is nothing in the record which suggests that eliminating a nonconforming use after an interruption of 2 years or more is arbitrary, unreasonable, and without substantial relation to the public safety, health, morals, or general welfare.

As to the second part of the argument, that the presence of the mobile home on their property does not violate § 27.07.050, the Bruces argue that the evidence establishes a permitted agricultural use of the mobile home. That, however, just is not the fact. Even if we were to resolve the evidentiary conflicts relative to the use made of the land in favor of the Bruces, as we are permitted to do in this equity case, there is no evidence which relates the use of the mobile home to the agricultural uses permitted by § 27.07.050. The uncontroverted evidence is that the mobile home is used as a residence by the Bruces' adult daughter, separate and apart from the dwelling occupied by the Bruces, and does not constitute an ancillary use.

The decree of the trial court granting the City of Lincoln a mandatory injunction being correct, it is affirmed.

AFFIRMED.